1  Benjamin Blakeman (CSBN 60596)
   BLAKEMAN LAW
2  611 Wilshire Blvd., Ste. 1208
   Los Angeles, CA 90017
3  Telephone: 213-629-9922
   Facsimile:  213-232-3230
4  Email: ben@lifeinsurance-law.com

5  ***ATTORNEYS FOR PLAINTIFF
   AND THE PROPOSED CLASS AND SUBCLASS***

6

7

8

9

10

11

12

13              **IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15  JOHN BARONE, on behalf of          | **Case No.:**
    himself and all others similarly   |
16  situated,                          | **CLASS ACTION COMPLAINT FOR:**
17                     Plaintiff,       |  (1) Negligence
                                        |  (2) Violation of California's Data
18         vs.                          |      Breach Law (Cal Civ. Code §§
                                        |      1798.80 *et seq.*) and
19  EQUIFAX, INC., a Georgia            |  (3) Violation of California's Unfair
    corporation,                        |      Competition Law (Cal. Bus. & Prof.
20                     Defendant.       |      Code §§ 17200, *et seq.*).
                                        |  (4) Constructive Fraud
21

22                                      | **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

Class Action Complaint;
Case No.:

Plaintiff John Barone ("Plaintiff"), individually and on behalf of the general public and all other similarly situated (the "Class members"), by and through his undersigned counsel, upon personal knowledge as to facts pertaining to him and on information and belief as to all other matters, brings this action against Equifax, Inc. ("Equifax" or "Defendant"), and states the following:

## NATURE OF THE CASE

1.    On September 7, 2017, Equifax announced one of the largest and most severe data breaches in history (referred to hereinafter as the "Data Breach"), admitting that the personal and/or confidential information of as many as 143 million Americans had been compromised or disclosed to unauthorized third parties between mid-May and July 2017.

2.    The information accessed included names, Social Security numbers, birth dates, addresses and, in some instances, driver's license numbers (this information is hereinafter referred to as personally identifiable information ("PII")). In addition, credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with PII for approximately 182,000 U.S. consumers, were accessed.

3.    This is a consumer class action suit brought by Plaintiff, individually and on behalf all other similarly situated persons whose PII and credit account information was made accessible to thieves or other third parties after being entrusted to, and while in the possession, custody, and control of, Defendant Equifax. This information is private and sensitive in nature, and Equifax failed to adequately protect it. Equifax did not obtain consent or permission from Plaintiff or any of the Class members to disclose their PII, credit account, or other personal and confidential information to any other person or entity, as would be required for such disclosure by applicable law and industry standards prior to any such disclosure.

4.    Equifax discovered the data breach in July 2017, but failed to publicly report it or otherwise alert those affected until September 7, 2017, when it finally issued a press release.

Class Action Complaint;
Case No.:

5.    In its press release, Defendant Equifax failed (or refused) to provide any substantive information as to how the breach actually occurred, choosing instead to attribute it to an unspecified "application vulnerability." Attempting to downplay its significance, Equifax Chairman and Chief Executive Officer Richard Smith dismissively described the Data Breach as "a disappointing event for our company."

6.    The Data Breach is even more "disappointing" for those, including Plaintiff and the Class members, who are among the 143 million Americans who have had their most sensitive PII and credit account information exposed by reason of Equifax's conduct in: (a) failing to adequately protect that information; (b) failing to inform Plaintiff and the Class members that it did not have adequate systems or security processes, protocols, or practices in place to safeguard that information; (c) failing to prevent the Data Breach from occurring; (d) failing to mitigate the effects of the Data Bread; and (e) failing to provide timely notice of the Data Breach after its occurrence.

7.    Ultimately, Equifax intentionally, willfully, recklessly and/or negligently failed to protect the PII and credit account information of Plaintiff and the Class members from unauthorized disclosure. As a result, Plaintiff and the Class members have been damaged and remain at substantial and continuing likelihood for identity theft/fraud. Indeed, financial experts have opined that victims of a data breach are 9.5 times more likely to be a victim of identity fraud that are members of the general public. Accordingly, Plaintiff and the Class members now "need to be hyper vigilant and monitor their accounts" for fraudulent activity.

8.    As a direct and proximate result of Equifax's intentional, willful, reckless and/or negligent acts and omissions, of its violation of state and federal statutes, and of the resulting Data Breach, over 143 million individuals in the United States – including Plaintiff and the Class members – have had their PII and credit account information exposed to fraud and identity theft, and have suffered injuries including but not limited to:

Class Action Complaint;
Case No.:

a.  theft or misuse of their personal and financial information;

b.  substantial immediate and continuing likelihood for identity theft/fraud;

c.  costs associated with the detection and prevention of identity theft/fraud and unauthorized use of their personal information and/or financial account

d.  unauthorized charges on their debit and credit accounts;

e.  lost use of, or limitation of access to, account funds and costs associated therewith, including missed payments on bills or loans, late charges and fees, negative effects on credit (e.g., decreased credit scores and adverse credit notations), etc.;

f.  loss of productivity and other costs associated with efforts necessary to ameliorate or mitigate the present and future consequences of the Data Breach, including watching for and finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

g.  damages to, and diminution in value of, their personal and financial information, which was entrusted to Equifax for the sole purpose of reporting and/or monitoring their credit profiles and with the mutual understanding that Equifax would safeguard that information from access, theft, or misuse;

h.  money paid for products or services purchased from Equifax (e.g., credit monitoring, credit score inquiry) prior to the Data Breach, as Plaintiff and the Class members would not have purchased such products or services had Equifax disclosed its lack of adequate security systems, processes, and protocols to reasonably safeguard their personal and financial information; and/or

i. continued substantial risk to their personal and financial information, which remains in the possession of Equifax and which is subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect it.

9.     Plaintiff, on behalf of himself and all others similarly situated, seeks to remedy these harms, and to prevent their future occurrence. To that end, they are asserting claims against Equifax for negligence, violation of state consumer protection laws, and violation of state data breach statutes. They seek to recover damages, including actual and statutory damages, to obtain equitable relief (including injunctive relief, restitution, disgorgement), and to recover costs and reasonable attorney fees as permitted by law.

10.     Plaintiff has standing to bring this class action on behalf of himself and the Class members because they were damaged as a direct and proximate result of Equifax's wrongful conduct and the Data Breach resulting therefrom.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d), because this is a class action involving more than 100 Class Members, the amount in controversy exceeds $5 million exclusive of interest and costs, and many members of the Class, including Plaintiff, are citizens of different states than Defendant.

12.     This Court has personal jurisdiction over Equifax because Equifax is authorized to conduct business in California, and does in fact conduct business in California. Equifax therefore has sufficient minimum contacts with the state to render exercise of jurisdiction by this Court in compliance with traditional notions of fair play and substantial justice.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Equifax regularly conducts business in this district, unlawful acts or

4

omissions are alleged to have occurred in this district, and Equifax is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

14.     Because, as described *infra*, Plaintiff John Barone is a resident of Sonoma County, pursuant to the Local Rules for the Northern District of California, this case should be assigned to the San Francisco Division or the Oakland Division.

## PARTIES

15.     Plaintiff John Barone is a resident of Santa Rosa, Sonoma County, California.  As confirmed by Equifax, Plaintiff's PII and/or credit account information was included in the Data Breach and was disclosed to unauthorized third parties and, therefore, was harmed as a direct and proximate result thereof.

16.     As a direct and proximate result of Defendant Equifax's wrongful acts or omissions (as set forth fully herein) and the resulting data breach, Plaintiff and each of the Class members have suffered actual harm and have been placed at imminent substantial and continuing risk for identity theft or identity fraud (as Equifax has conceded in its recent press releases and by its creation of a urging consumers to sign up for credit file monitoring and identity theft protection).

17.     As a direct and proximate result of Defendant Equifax's wrongful acts or omissions and the resulting Data Breach, Plaintiff and each Class member have spent time, and will continue to spend time and effort in the future, monitoring their financial accounts. Additionally, the PII and/or credit account information of Plaintiff and each Class member has been placed at a substantially increased risk of identity fraud/theft or other misuse, thus requiring them to take protective measures they would not have had to take but for the Data Breach. Any additional misuse of Plaintiff's or the Class members' PII or credit account information will result in additional damages.

18.     Defendant Equifax is a Georgia corporation with its headquarters in Atlanta, Georgia.

19.    Defendant Equifax has numerous offices throughout California and in this District, including in Palo Alto, San Rafael, Concord, Panorama City, and Moonpark.  Further, TrustedID, Equifax's wholly-owned subsidiary and provider of credit monitoring services following the Equifax Data Breach, is headquartered in Palo Alto, California.

## FACTUAL ALLEGATIONS

20.    Prior to the Data Breach, Equifax promised its customers and everyone whose PII it collects that it would reasonably protect their PII. Equifax publishes numerous privacy policies, and proudly declares that: "For more than 100 years, . . . [w]e have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. . . . Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax."

21.    Plaintiff and Class members had no choice in Equifax's collection, maintenance, and ultimate disclosure of their PII. Rather, Equifax was allowed to perform such services, involving such sensitive information only if it adhered to the requirements of laws meant to protect the privacy of such information.  Equifax's maintenance, use, and furnishing of such PII is and was intended to affect Plaintiff and Class members, and the harm caused by disclosure of that PII in the Data Breach was entirely foreseeable to Equifax.

22.    On its website, Equifax "recommend[s] that consumers be vigilant in reviewing their account statements and credit reports." (last visited Sept. 7, 2017).

23.    There is a strong likelihood that Class members already have or will become victims of identity fraud given the breadth of their PII that is now publicly available.

24.    For instance, Javelin Strategy & Research, a consulting firm that specializes in fraud and security, reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud." In fact, "[i]n 2013, one in three

6

consumers who received notification of a data breach became a victim of fraud." Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts (e.g., eBay, Amazon) and email payment accounts such as PayPal." (last visited April 14, 2016).

25.     Equifax's creation of the www.equifaxsecurity2017.com website itself has created further threats to consumers and their PII. Because the website is not hosted on Equifax's company domain, equifax.com, it is easy to create fake versions of the site. Like www.equifaxsecurity2017.com, these fake sites also prompt consumers to enter their PII, including last name and Social Security number, furthering the exposure and risk to consumers. This risk is not merely hypothetical. At least one such fake version already was created. To demonstrate how unsecured www.equifaxsecurity2017.com is, software engineer Nick Sweeting created one such fake website, www.securityequifax2017.com. The site received almost 200,000 visits before it was taken down. The fraud is so convincing that on three separate occasions Equifax itself posted links to the imitation website through Equifax's Twitter account. These posts have since been deleted.

26.     The exposure of Plaintiff's and Class members' Social Security numbers in particular poses serious problems. Criminals frequently use Social Security numbers to create false bank accounts, file fraudulent tax returns, and incur credit in the victim's name. Even where data breach victims obtain a new Social Security number, the Social Security Administration warns "that a new number probably will not solve all [] problems . . . and will not guarantee [] a fresh start."[1] In fact, "[f]or some victims of identity theft, a new number actually creates new problems." One of those new problems is that a new Social Security number will have a completely blank credit history, making it difficult to get credit for a few years unless it is linked to the old compromised number.

27.     As a result of the Data Breach, Plaintiff and Class members face the following injuries:

28.    identity fraud and theft, including unauthorized bank activity, fraudulent credit card purchases, and damage to their credit;

    a.  money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of PII;

    b.  loss of the opportunity to control how their PII is used;

    c.  loss of use of and access to their financial accounts and/or credit;

    d.  impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

    e.  loss of access to new credit, and/or increased time and money being required to get new credit, following implementation of credit freezes;

    f.  lowered credit scores resulting from credit inquiries following fraudulent activities;

    g.  costs and lost time obtaining credit reports in order to monitor their credit records;

    h.  money, including fees charged in some states and time spent placing fraud alerts and security freezes on credit records;

    i.  money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

    j.  costs of credit monitoring that is more robust than the services being offered by Equifax;

    k.  anticipated future costs from the purchase of credit monitoring and/or identity theft protection services once the temporary services being offered by Equifax expire;

    l.  costs and lost time from dealing with the consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

8

m. money and time expended to ameliorate the consequences of the filing of fraudulent tax returns; and

n. continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Equifax fails to undertake appropriate steps to protect adequately the PII in its possession.

29. The risks that Plaintiff and Class members bear as a result of the Data Breach cannot be mitigated by the credit monitoring Equifax has offered to affected consumers because it can only help detect, but will not prevent, the fraudulent use of Class members' PII. Instead, Plaintiff and Class members will need to spend time and money to protect themselves. For instance, credit reporting agencies impose fees for credit freezes in certain states. In addition, while credit reporting agencies offer consumers one free credit report per year, consumers who request more than one credit report per year from the same credit reporting agency must pay a fee for the additional report. Such fees constitute out-of-pocket costs to Class members.

30. The risks borne by affected consumers are not hypothetical: Equifax has admitted that Class members' personal information was disclosed in the Data Breach, has admitted the risks of identity theft, and has encouraged consumers to vigilantly monitor their accounts.

31. The Gramm-Leach-Bliley Act ("GLBA") imposes upon "financial institutions" "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801. Under Section 6801(b), to satisfy this obligation, financial institutions must satisfy certain standards relating to administrative, technical, and physical safeguards:

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

9

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

32.     In order to satisfy their obligations under the GLBA, financial institutions must "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [their] size and complexity, the nature and scope of [their] activities, and the sensitivity of any customer information at issue." See 16 C.F.R. § 314.4. "In order to develop, implement, and maintain [their] information security program, [financial institutions] shall:

(a) Designate an employee or employees to coordinate [their] information security program. (b) Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks. At a minimum, such a risk assessment should include consideration of risks in each relevant area of [their] operations, including:

(1) Employee training and management;

(2) Information systems, including network and software design, as well as information processing, storage, transmission and disposal; and

(3) Detecting, preventing and responding to attacks, intrusions, or other systems failures.

(c) Design and implement information safeguards to control the risks [they] identify through risk assessment, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

(d) Oversee service providers, by:

> (1) Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; and
>
> (2) Requiring [their] service providers by contract to implement and maintain such safeguards.
>
> (e) Evaluate and adjust [their] information security program in light of the results of the testing and monitoring required by paragraph (c) of this section; any material changes to [their] operations or business arrangements; or any other circumstances that [they] know or have reason to know may have a material impact on [their] information security program."

*Id.*

33.    In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F, financial institutions have an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." See *id.* "At a minimum, an institution's response program should contain procedures for the following:

> a. Assessing the nature and scope of an incident, and identifying what customer information systems and types of customer information have been accessed or misused;
>
> b. Notifying its primary Federal regulator as soon as possible when the institution becomes aware of an incident involving unauthorized access to or use of sensitive customer information, as defined below;
>
> c. Consistent with the Agencies' Suspicious Activity Report ("SAR") regulations, notifying appropriate law enforcement authorities, in addition to filing a timely SAR in situations involving Federal criminal violations requiring immediate attention, such as when a reportable violation is ongoing;

Class Action Complaint;
Case No.:

d. Taking appropriate steps to contain and control the incident to prevent further unauthorized access to or use of customer information, for example, by monitoring, freezing, or closing affected accounts, while preserving records and other evidence; and

e. Notifying customers when warranted."

*Id.*

34.    Furthermore, "[w]hen a financial institution becomes aware of an incident of unauthorized access to sensitive customer information, the institution should conduct a reasonable investigation to promptly determine the likelihood that the information has been or will be misused. If the institution determines that misuse of its information about a customer has occurred or is reasonably possible, it should notify the affected customer as soon as possible." *See id.*

35.    Credit bureaus are "financial institutions" for purposes of the GLBA, and are therefore subject to its provisions. *See TranUnion LLC v. F.T.C.,* 295 F.3d 42, 48 (D.C. Cir. 2002). Under Regulation Y promulgated by the Federal Reserve Board, Bank Holding Companies and Change in Bank Control, "credit bureau services" are "so closely related to banking or managing or controlling banks as to be a proper incident thereto." Because Equifax is a credit bureau and performs credit bureau services, it qualifies as a financial institution for purposes of the GLBA.

36.    "Nonpublic personal information," includes PII (such as the PII compromised during the Data Breach) for purposes of the GLBA. Likewise, "sensitive customer information" includes PII for purposes of the Interagency Guidelines Establishing Information Security Standards.

37.    Upon information and belief, Equifax failed to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to, Equifax's failure to (a) implement and

maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Class members' PII.

38.     Upon information and belief, Equifax also failed to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems" as mandated by the GLBA. This includes, but is not limited to, Equifax's failure to notify affected individuals themselves of the Data Breach in a timely and adequate manner.

## **CLASS ALLEGATIONS**

39.     Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

40.     Plaintiff brings claims as specified below on behalf of a proposed nationwide class ("Nationwide Class"), preliminarily defined as follows:

> All natural persons and entities in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017.

41.     Plaintiff also brings claims as specified below on behalf of a California statewide subclass (the "California Subclass"), preliminarily defined as follows:

> All natural persons and entities in California whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017.

42.     Except where otherwise noted, "Class members" shall refer to members of the Nationwide Class and the California Subclass, collectively, and all classes are referred to collectively as the "Classes."

13

43. Excluded from the Nationwide Class and the California Subclass are Defendant and its current employees, as well as the Court and its personnel presiding over this action.

44. The Nationwide Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3).

45. <u>Numerosity</u>: The Classes are so numerous that joinder of all members is impracticable. According to Equifax, the Data Breach affected approximately 143 million U.S. consumers.

46. <u>Commonality</u>: There are numerous questions of law and fact common to all Class members, including but not limited to the following:

    a. whether Defendant engaged in the wrongful conduct alleged herein;

    b. whether Defendant owed a duty to Plaintiff and Class members to adequately protect their PII;

    c. whether Defendant breached its duties to protect the PII of Plaintiff and Class members;

    d. whether Defendant knew or should have known that its data security systems and processes were vulnerable to attack;

    e. whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of PII;

    f. whether Defendant violated state data breach laws and other laws; and

    g. whether Plaintiff and Class members are entitled to equitable relief including injunctive relief.

47. <u>Typicality</u>: Plaintiff's claims are typical of the claims of Class members. Plaintiff, like all proposed Class members, had his PII compromised in the Data Breach.

48.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of all Class members. Plaintiff has no interests that are adverse to, or in conflict with, other Class members. There are no claims or defenses that are unique to Plaintiff. Likewise, Plaintiff has retained counsel experienced in class action and complex litigation, including data breach litigation, that have sufficient resources to prosecute this action vigorously.

49.    <u>Predominance</u>: The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Classes predominate over any questions which may affect only individual Class members.

50.    <u>Superiority</u>: The proposed Classes also meet the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

51.    Absent a class action, the majority of Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

52.    <u>Risks of Prosecuting Separate Actions</u>: Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Equifax. Equifax continues to maintain the PII of the Class members and other individuals, and varying adjudications could establish incompatible standards with respect to: Defendant's duty to protect individuals' PII; whether Defendant's ongoing conduct violates the state or federal law; and

whether the injuries suffered by Class members are legally cognizable. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

53.   <u>Injunctive Relief</u>: In addition, Defendant has acted and/or refused to act on grounds that apply generally to all Class members, making injunctive and/or declaratory relief appropriate with respect to all Classes under Federal Rule of Civil Procedure 23(b)(2). Defendant continues to (1) maintain the PII of Class members, (2) fails to adequately protect their PII, and (3) violates Class members' rights for the reasons alleged herein.

54.   <u>Certification of Particular Issues</u>: In the alternative, this action may be maintained as class actions with respect to particular issues, in accordance with Fed. R. Civ. P. 23(c)(4).

## FIRST CAUSE OF ACTION

### Negligence

55.   Plaintiff incorporates by reference all paragraphs above.

56.   Equifax owed a duty to Plaintiff and Class members, arising from the sensitivity of the information and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, maintaining, monitoring, and testing Equifax's security systems, protocols, and practices to ensure that Class members' information was adequately secured from unauthorized access.

57.   Equifax's privacy policy, and other public statements, acknowledged its duty to adequately protect Class members' PII.

58.   Equifax owed a duty to Class members to implement intrusion detection processes that would detect a data breach in a timely manner.

16

59.     Equifax also had a duty to delete any PII that was no longer needed to serve client needs.

60.     Equifax owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Class members' PII.

61.     Equifax also had independent duties under Plaintiff's and Class members' state laws that required Equifax to reasonably safeguard Plaintiff's and Class members' PII and promptly notify them about the Data Breach.

62.     Equifax had a special relationship with Plaintiff and Class members from being entrusted with their PII, which provided an independent duty of care. Plaintiff and Class members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions. Moreover, Equifax had the ability to protect its systems and the PII it stored on them from attack.

63.     Equifax's role to utilize and purportedly safeguard consumers' PII presents unique circumstances requiring a reallocation of risk.

64.     Equifax breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; (c) failing to disclose that its data security practices were inadequate to safeguard Class members' PII; and (d) failing to provided adequate and timely notice of the Data Breach.

65.     But for Equifax's breach of its duties, Class members' PII would not have been accessed by unauthorized individuals.

66.     Plaintiff and Class members were foreseeable victims of Equifax's inadequate data security practices. Equifax knew or should have known that a breach of its data security systems would cause damages to Class members.

67.     As a result of Equifax's willful and/or negligent failure to prevent the Data Breach, Plaintiff and Class members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class members must monitor their financial accounts and

credit histories more closely and frequently to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII has also diminished the value of the PII.

68.    The damages to Plaintiff and Class members were a proximate, reasonably foreseeable result of Equifax's breaches of its duties.

69.    Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Violations of the California Data Breach Act, California Civil Code §§ 1798.80, *et seq.*

70.    Plaintiff incorporates by reference all paragraphs above.

71.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted the Customer Records Act (the "California CRA"), Civil Code §1798.81.5, which requires that any business that "owns licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

72.    The events alleged herein constituted a "breach of the security system" of Equifax within the meaning of Civil Code §1798.82.

73.    The information lost, disclosed, or intercepted during the events alleged herein constituted unencrypted "personal information" within the meaning of Civil Code §§1798.80(e) and 1798.82(h).

74.    Equifax failed to implement and maintain reasonable or appropriate security procedures and practices to protect consumers' personal and financial information. On information and belief, Equifax failed to employ security measures

18

that comport with industry standards, best practices or safeguards with respect to consumers' PII.

75.    Equifax failed to disclose the breach of security of its system in the most expedient time possible and without unreasonable delay after it knew or reasonably believed that consumers' personal information had been compromised.

76.    The breach of the personal information of millions of Equifax's consumers' records constituted a "breach of the security system" of Equifax pursuant to Civil Code §1798.82(g).

77.    By failing to implement reasonable measures to protect consumers' personal data it maintained, Equifax violated Civil Code §1798.81.5.

78.    In addition, by failing to promptly notify all affected consumers that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Equifax violated Civil Code §1798.82 of the same title in a manner that would reach all affected consumers.

79.    By violating Civil Code §§1798.81.5 and 1798.82, Equifax "may be enjoined" under Civil Code §1798.84(e).

80.    Accordingly, Plaintiff requests that the Court enter an injunction requiring Equifax to implement and maintain reasonable security procedures to protect consumers' data in compliance with the California Customer Records Act, including, but not limited to: (1) ordering that Equifax, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2) ordering that Equifax engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures; (4)

19

ordering that Equifax, consistent with industry standards, conduct regular database scanning and security checks; (5) ordering that Equifax, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (6) ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

81.    Plaintiff further requests that the Court require Equifax to: (1) identify and notify all members of the Class who have not yet been informed of the data breach; and (2) to notify affected customers of any future data breaches by email and text within 24 hours of Equifax's discovery of a breach or possible breach, and by mail within 72 hours.

82.    As a result of Equifax's violation of Civil Code §§1798.81, 1798.81.5, and 1798.82, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) deprivation of the value of their PII, for which there is a well-established market, (v) failure to receive the full benefit of their bargain as a result of receiving credit fraud and monitoring services that were less valuable than what they paid for, and/or (vi) the financial and/or temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

83.    Plaintiff, individually and on behalf of the members of the Class, seeks all remedies available under Civil Code §1798.84, including, but not limited to: (a) damages suffered by members of the Class; and (b) equitable relief. Plaintiff, individually and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under applicable law.

## THIRD CAUSE OF ACTION
### Violation of California's Unfair Competition Law,
### Bus. & Prof. Code §§ 17200, *et seq*.

84.    Plaintiff incorporates by reference all paragraphs above.

85.    The California Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of its above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Breach, Equifax engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

86.    Equifax's unfair and fraudulent acts and practices include but are not limited to the following:

    a.  Equifax failed to enact adequate privacy and security measures to protect California Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, in violation of industry standards and best practices, which was a direct and proximate cause of the Data Breach;

    b.  Equifax failed to take proper action, following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.  Equifax knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard Class members' PII from unauthorized disclosure, release, data breaches, and theft;

    d.  Equifax knowingly and fraudulently misrepresented that it would and did comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class members' PII;

    e.  Equifax knowingly omitted, suppressed, and concealed the inadequacy of its privacy and security protections for Class members' PII;

Class Action Complaint;
Case No.:

f.  Equifax failed to maintain reasonable security, in violation of Cal. Civ. Code § 1798.81.5; and

g.  Equifax failed to disclose the Data Breach to Class members in a timely and accurate manner, in violation of the duties imposed by Cal. Civ. Code § 1798.82 et seq.

87.  Equifax's acts and practices also constitute "unfair" business acts and practices, in that the harm caused by Equifax's wrongful conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused and will continue to cause substantial injury to consumers such as Plaintiff and Class members.

88.  Equifax's acts and practices also constitute "unlawful" business acts and practices by virtue of their violation of the the GLBA, 15 U.S.C. § 6801 et seq. (as described fully above), California's fraud and deceit statutes, Cal. Civ. Code §§ 1572, 1573, 1709, 1711; Cal. Bus. & Prof. Code §§ 17200, et seq., 17500, et seq., the California Customer Records' Act, Cal. Civ. Code §§ 1798.80, et seq. (further described below), and California common law.

89.  There were reasonably available alternatives to further Equifax's legitimate business interests, including using best practices to protect Class members' PII, other than Equifax's wrongful conduct described herein.

90.  As a direct and/or proximate result of Equifax's unfair practices, Plaintiff, the Nationwide Class, and the California Subclass have suffered injury in fact in connection with the Data Breach, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII. As a result, Plaintiff and other Class members are entitled to compensation, restitution, disgorgement, and/or other equitable relief. Cal. Bus. & Prof. Code § 17203.

91.     Equifax knew or should have known that its data security practices and infrastructure were inadequate to safeguard Class members' PII, and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to Class members' rights.

92.     On information and belief, Equifax's unlawful and unfair business practices, except as otherwise indicated herein, continue to this day and are ongoing.

93.     Plaintiff and Class members also are entitled to injunctive relief, under California Business and Professions Code §§ 17203, 17204, to stop Equifax's wrongful acts and to require Equifax to maintain adequate security measures to protect the personal and financial information in its possession.

94.     Under Business and Professions Code § 17200 et seq., Plaintiff seeks restitution of money or property that the Defendant may have acquired by means of deceptive, unlawful, and unfair business practices (to be proven at trial), restitutionary disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices (to be proven at trial), declaratory relief, and attorney's fees and costs (allowed by Cal. Code Civil Pro. §1021.5).

## FOURTH CAUSE OF ACTION

### Constructive Fraud

95.     Plaintiff incorporates by reference all paragraphs above.

96.     Equifax owed a duty to Plaintiff and Class members to adequately protect their PII under various state and federal laws and regulations by virtue of being a consumer reporting agency.

97.     As a consumer reporting agency to whom Plaintiff's and Class members' most intimate, sensitive and private personal information and PII was provided, Equifax enjoyed a special relationship of trust and confidence with Plaintiff and Class members and owed them a heightened duty above and beyond normal commercial relations.    Accordingly, Plaintiff and Class members reasonably expected Equifax

Class Action Complaint;
Case No.:

would adhere to its obligations to adequately protect the sensitive, personal information they provided including the PII Equifax allowed to be stolen.

98.    Equifax breached this duty by failing to maintain security adequate to protect Plaintiff and Class members' PII, and by failing to timely and adequately notify them of the breach.

99.    As a result of Equifax's conduct, Plaintiff and Class members are entitled to damages and equitable relief.

## DEMAND FOR JURY TRIAL

100.    Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and consumers similarly situated, prays for judgment as follows:

A.    An Order certifying the proposed Classes defined herein, designating Plaintiff as representative of said Classes, and appointing the undersigned counsel as Class Counsel;

B.    For restitution of all amounts obtained by Equifax as a result of its wrongful conduct in an amount according to proof at trial, plus prejudgment and post-judgment interest thereon;

C.    For all recoverable compensatory, consequential, actual, and/or statutory damages in the maximum amount permitted by law;

D.    For punitive and exemplary damages;

E.    For other equitable relief;

F.    For such injunctive relief, declaratory relief, orders, or judgment as necessary and appropriate to prevent these acts and practices;

G.    For payment of attorneys' fees and costs as allowable by law; and

H.    For all such other relief as this Honorable Court deems appropriate.

Class Action Complaint;
Case No.:

DATED:  October 17, 2017                    Respectfully Submitted,

/s/ Benjamin Blakeman

Benjamin Blakeman (CSBN  60596)
**BLAKEMAN LAW**
611 Wilshire Blvd., Ste. 1208
Los Angeles, CA 90017
Telephone: 213-629-9922
Facsimile:   213-232-3230
Email: ben@lifeinsurance-law.com

***ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS AND SUBCLASS***

25

Class Action Complaint;
Case No.: